# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

In re:

|  |  |
|---|---|
| ILAN DORON, NCM GROUP, LLC, NCM WIRELESS, LLC, AND NCM WIRELESS HOLDINGS INC., | Case No.: 21-21964-RAM<br>Chapter 7<br>Substantively Consolidated |
|        Debtors.<br>_____/ | |
| MARCIA T. DUNN, Chapter 7 Trustee, | Adv. Case No. 23-_____-RAM |
|       Plaintiff,<br>v. | |
| ARTURO JOSE TRUJILLO, | |
|       Defendant.<br>_____/ | |

## COMPLAINT

Plaintiff, MARCIA T. DUNN, solely as the duly appointed Chapter 7 Trustee (the "Trustee" or "Plaintiff") of the above-referenced substantively consolidated bankruptcy estate, by and through counsel and pursuant to Rule 7001, Federal Rules of Bankruptcy Procedure, sues[1] Defendant, ARTURO JOSE TRUJILLO (the "Defendant") and alleges, as follows:

## THE PARTIES, JURISDICTION AND VENUE

1.      This is an adversary proceeding brought by Plaintiff against Defendant to avoid and recover fraudulent transfers and for an award of money damages arising from unjust enrichment pursuant to 11 U.S.C. §§ 541, 542, 544, 548, and 550, Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), 726.106(1), and 726.108(1)(a), and other relief under applicable non-bankruptcy federal and state law.

---

[1] Plaintiff reserves the right to bring additional claims against Defendant and nothing contained herein shall be deemed a waiver of any rights or causes of action that the Plaintiff may have against Defendant.

1

2.      Plaintiff is the duly appointed and acting Chapter 7 trustee of the substantively consolidated estate (the "Estate") of the Debtors Ilan Doron, NCM Group, LLC, NCM Wireless, LLC, and NCM Wireless Holdings Inc. (collectively, the "Debtors") and, in that capacity, has the authority to prosecute this adversary proceeding.

3.      Defendant is an individual residing in the State of Florida.

4.      Defendant has operated, conducted, engaged in, or carried on a business or business venture in Florida, or has engaged in substantial and not isolated activity within this State, and is otherwise *sui juris* and is subject to the jurisdiction of this Court.

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

6.      This is a core proceeding for which this Court is authorized to hear and determine all matters and enter final judgment in accordance with 28 U.S.C. § 157(b)(2)(A), (E), (H) and (O).

7.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      All conditions precedent to this action have been met, have occurred, been waived, satisfied and/or or have otherwise been excused, would be futile, or would result in irreparable injury.

**GENERAL ALLEGATIONS**

A.    **Commencement of the Bankruptcy Cases**

9.    On December 23, 2021 (the "Petition Date"), Ilan Doron ("Doron") filed a voluntary petition bankruptcy case under Chapter 11, Subchapter V of Title 11 of the United States Code [D.E. 1].

10.    On August 10, 2022, the Court entered an Order converting the case to one under Chapter 7 [D.E. 361].

11.    On August 11, 2022, Marcia T. Dunn was appointed as the Interim Chapter 7 Trustee and has since qualified as the permanent Trustee in this case [D.E. 367].

12.    On October 14, 2022, Plaintiff moved to substantively consolidate NCM Group, LLC, NCM Wireless, LLC, and NCM Wireless Holdings Inc. (collectively, the "Consolidated Debtors") into this Estate [D.E. 408].

13.    That motion was granted by Order entered on February 27, 2023 [D.E. 583] and became effective on March 17, 2023 by Order entered that same day [D.E. 599].

14.    The Court's February 27, 2023 Order preserved for the Estate any state law avoidance and Chapter 5 claims held by any of the Debtors pursuant to 11 U.S.C §§ 541, 544, 547, 548, 549 and 550 as to any transfers made by such debtor [D.E. 583].

15.    Defendant is a former employee of the Consolidated Debtors and he is believed to be a friend of Doron.

16.    The Trustee sought to investigate Trujillo's relationship with Doron and the Consolidated Debtors.

17.     On September 26, 2023, the Trustee filed and served Defendant with a Subpoena pursuant to Bankr.R. 2004 requiring the production of documents on or before October 13, 2023 [D.E. 753].

18.     On November 1, 2023, the Trustee mailed a meet-and-confer letter to Defendant requesting to meet-and-confer concerning his noncompliance with the Subpoena and providing Defendant with an extension to produce documents no later than November 10, 2023.

19.     Based on Defendant's failure to produce responsive documents to the Subpoena, the Trustee filed a Motion to Compel Production of Documents from Defendant on November 20, 2023 [D.E. 841] ("Motion to Compel"), and the Court entered an Order Granting Trustee's Motion to Compel on December 8, 2023 [D.E. 862] ("Compel Order").

20.     The Compel Order required Defendant to produce documents responsive to the Trustee's subpoena within 14 days of its entry [D.E. 862].

21.     Without any prior communication, Defendant appeared at the office of Trustee's counsel, but did not bring any documents responsive to the Trustee's subpoena with him.

22.     Trustee's counsel spoke with Defendant by phone on December 21, 2023, at which time Defendant admitted being employed at NCM as a salesperson and being friends with Doron.

23.     During that conversation, Defendant advised that his wages and commissions were paid to Advanced Vantage Group LLC.

24.     Advanced Vantage Group LLC is Florida limited liability company formed in November of 2018.

25.     Defendant is the registered agent for Advanced Vantage Group LLC.

26.     Defendant and Viviana Lopez, who is believed to be his sister, are the members of Advanced Vantage Group LLC.

4

27.    In the afternoon of December 21, 2023, Defendant produced three documents, namely a 1099-MISC issued to him by NCM Wireless Inc. for tax year 2018, a 1099-MISC issued to Advanced Vantage Group LLC by NCM Wireless Inc. for tax year 2018, and 1099-MISC issued to Advanced Vantage Group LLC by NCM Group for tax year 2019.

28.    To date, Trujillo has not produced any other documents to substantiate the services or sales for which he and Advanced Vantage Group LLC were paid by the Consolidated Debtors.

B.    **The Consolidated Debtors' Pre-Petition Business**

29.    Prior to the Petition Date, the Consolidated Debtors were primarily engaged in distribution and wholesale of electronic goods internationally, particularly mobile devices (the "Business").

30.    NCM Wireless Inc. was the primary operating business until it was converted to the Debtor NCM Group LLC ("NCM Group") by the filing of articles of conversion with the Florida Department of State on June 13, 2019.

31.    NCM Group is the successor in interest to NCM Wireless Inc.

32.    As such, all references to NCM Group shall collectively refer to NCM Group and its predecessor prior to conversion, NCM Wireless Inc.

33.    NCM Group required extensive working capital to purchase its inventory.

34.    During the period that the Business was operational, NCM Group was funded primarily with: (a) general unsecured loans in which lenders charged rates exceeding the rates that available at traditional financial institutions; and (b) merchant cash advances.

35.    The nature of the Business and the way Doron carried on NCM Group's business made NCM Group a poor credit risk for traditional institutional lending.

36.    The interest rates charged by these lenders were at or above the legal limit permitted under state law for such loans.

37.    At all times relevant, NCM Group was highly leveraged.

38.    Given that the primary goods sold by NCM Group were mobile and other electronic devices, the value of the inventory depreciated quickly if not promptly sold.

39.    At all times relevant, it is believed that NCM Group overstated the value of its inventory and the collectability of its accounts receivable.

40.    During 2017, NCM Group advanced $1,450,000.00 to four affiliates owned and controlled by Doron.

41.    While booked as advances, these transactions had no stated period of repayment, no stated interest rate, and were not memorialized in any written instrument.

42.    While booked as advances, NCM Group was not accruing interest on the advances and never attempted to collect from the related entities.

43.    While booked as advances, other than to record ledger entries reflecting the transfer of funds to the related entities, no commercial formalities were observed with respect to the transactions.

44.    The transactions were disguised distributions to Doron to avoid the tax consequences of his direct receipt of the same and were improperly booked as assets of NCM Group notwithstanding that Doron knew or should have known that NCM Group had no intention of collecting the advances.

45.    During the relevant period, Doron also caused NCM Group to make disbursements to third parties to pay personal obligations incurred by him exceeding $1 million and thereby

substantially depleting working capital that would be available to purchase inventory and service debt.

46.     The Covid-19 pandemic was the final nail in NCM Group's coffin.

47.     The pandemic prevented NCM Group from shipping existing inventory and receiving new inventory.

48.     Doron testified at his Rule 2004 examination that "[s]hipping overseas and receiving product from overseas was completely impossible, due to the restrictions on shipments and travel…"

49.     NCM Group's collection of its receivables ground to a halt as customers impacted by the pandemic delayed payment or failed to make payment.

50.     Doron testified at his Rule 2004 examination that "[c]ompanies that needed to pay us under credit terms did not."

51.     Doron testified at his Rule 2004 examination that "[l]iquidity was a big issue for us."

52.     Doron testified at his Rule 2004 examination that NCM Group could not extend credit and "[e]veryone was pretty much maxed out."

53.     Doron testified as his Rule 2004 examination that "90 plus percent of [NCM Group's] cash flow was always working and operating …. [and] [e]verything came to a halt."

54.     Doron testified at his Rule 2004 examination that NCM Group froze its staff in April of 2020.

**C.     The Lender Lawsuits and Other Litigations**

55.     NCM Group defaulted in its obligations to several of its lenders.

56.     According to a lawsuit filed in the Supreme Court of the State of New York, County of Kings, under Index No. 516381/2020, NCM Group defaulted under an October 28, 2019 receivable purchase agreement entered into with Terrapin Business Funding LLC ("Terrapin") on July 17, 2020.

57.     Terrapin was awarded judgment in the sum of $714,157.40 on August 4, 2021 in that lawsuit.

58.     On September 10, 2020, Dhruv Piplani ("Piplani") commenced an action in the Supreme Court of the State of New York, County of New York, under Index No. 654356/2020, against NCM Wireless and Doron in which Piplani filed a motion for summary judgment in lieu of complaint arising from the breach of a promissory noted dated September 1, 2017.

59.     Piplani asserted that the default arose from a failure to pay the entire balance of the principal and interest when due at maturity on March 1, 2018.

60.     On December 21, 2020, Piplani was awarded judgment against NCM Wireless Inc. in the sum of $1,156,465.16, inclusive of interest from the March 1, 2018 date of default.

61.     On September 29, 2020, Robert Pease ("Pease") commenced a lawsuit against NCM Wireless Inc. and Doron in the United States District Court for the Southern District of Florida, in case no. 20-cv-23966-Bloom, arising from loans of $250,000.00 made on July 25, 2019, $560,422.60 on August 16, 2019, and $1,000,000.00 on January 8, 2020.

62.     On May 4, 2021, a judgment was entered in favor of Pease in the sum of $2,104,069.00.

63.     On September 29, 2020, YCA Group LLC ("YCA Group") filed a complaint against NCM Wireless Inc. in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-

Date County, Florida (the "11ᵗʰ Judicial Court") arising from a dishonored check in the sum of $100,000.00 written on June 25, 2020.

64.    Judgment was subsequently entered against NCM Wireless Inc. on June 16, 2021 in the sum of $400,000.00.

65.    On October 6, 2020, Global Merchant Cash, Inc. ("GMC") commenced an action against NCM Group and Doron in the Supreme Court of the State of New York, County of Nassau, under Index No. 610823/2020, by the filing of a summons with notice on the grounds that they had defaulted their obligations under the terms of a merchant agreement dated October 29, 2019.

66.    GMC asserted that the amount owed was $287,708.40, plus interest from the date of default, costs and reasonable attorneys' fees.

67.    According to the proof of claim filed by GMC in Doron's case, denominated claim no. 38, the default took place on August 4, 2020.

68.    On September 2, 2020, Grainways, Inc. ("Grainway") filed an action in the 11ᵗʰ Judicial Circuit, under case no. 20-18842-CA-01 against NCM Group and Doron for their breach of two promissory notes dated October 22, 2018 under which Grainways loaned $3,850,00.00 to NCM Group and Doron.

69.    Grainways claimed that it was owed $3,730,164.55 as of the Petition Date in its complaint and the proof of claim filed in the Estate on January 19, 2022.

70.    On November 17, 2020, CEB Development LLC ("CEB") commenced an action in the 11ᵗʰ Judicial Circuit, under case no. 2020-024729-CA-01, against NCM Wireless LLC and Doron alleging seeking to remove them from possession of the premises from which NCM Group operated due to a failure to pay rent and additional rent commencing in November 2020.

71.    Judgment of possession was entered in favor of CEB on December 22, 2020.

72.     On November 18, 2020, Michael F. Flanagan ("Flanagan"), as court-appointed receiver for Surefunding LLC, filed a lawsuit against the NCM Wireless Inc., NCM Group, and Doron in the 11th Judicial Circuit, under case no. 20-0284844-CA-01 in which he claimed that defendants were in breach of a promissory note delivered to Surefunding LLC dated September 4, 2019.

73.     Flanagan alleged in his complaint that the borrower, NCM Wireless Inc., defaulted on the payment due on October 21, 2019, resulting in the acceleration of the debt due Surefunding LLC.

74.     Flanagan asserted that $2,006,634.10 was due and owing to Surefunding LLC since November 9, 2019.

75.     Flanagan filed a proof of claim in the Estate on December 30, 2021 in the sum of $482,603.00 relating to the promissory note.

76.     On December 7, 2020, David Taeb and Ziauddin Taeb (collectively, the "Taebs") filed a complaint against NCM Group and Doron in the Denver District Court, State of Colorado, under case no. 2020CV34142, alleging breaches of promissory notes dated April 1, 2019, April 29, 2019, July 31, 2019, arising from nonpayment.

77.     The Taebs asserted that they were collectively owed more than $626,000.00 under the notes and personal guarantees given by Doron.

78.     That lawsuit was subsequently removed to the United States District Court for the District of Colorado and assigned case no. 21-cv-00189-NYW.

79.     On March 24, 2021, NCM Group consented to the entry of judgment in favor of the Taebs whereby they were awarded $477,076.00, plus prejudgment interest in the amount of $223,083.02.

80.     On December 11, 2020, CV NCM Wireless, LLC sued NCM Group and NCM Wireless Holdings, Inc. in the 11th Judicial Circuit, under case no. 2020-026656-CA-01, for breaches of loans made on May 11, 2020 and July 7, 2020, and a letter dated October 23, 2019 and sought money damages.

81.     NCM Group and NCM Wireless Holdings, Inc. consented to the entry of a final judgment against them and in favor of CV NCM Wireless LLC on March 4, 2021 in the sum of $2,606,933.29, plus interest thereon.

82.     On December 11, 2020, Continental Ventures Realty, LLC, sued NCM Group in the 11th Judicial Circuit, under case no. 2020-026648-CA-01, for breaches of loans made on October 10, 2018, January 11, 2019, and February 1, 2019 and sought money damages.

83.     NCM Group consented to the entry of a final judgment against it and in favor of Continental Ventures Realty, LLC on March 10, 2021 in the sum of $4,453,783.33, plus interest thereon.

84.     On December 21, 2020, Business Brokers LLC ("Business Brokers") filed a complaint against NCM Group in the 11th Judicial Court seeking money damages resulting from the non-payment of two promissory notes at maturity on December 5, 2019 and April 17, 2020, respectively, under case no. 2020-027372-CA-01.

85.     Business Brokers alleged that NCM Group also issued five checks which were dishonored by NCM Group's bank and that upon default in paying the notes at maturity, Business Brokers accelerated both notes in full.

86.     NCM Group consented to the entry of a final judgment against it and in favor of Business Brokers in the sum of $4,000,000.00 on March 24, 2021 to resolve the claims asserted in Business Broker's lawsuit.

87.     On February 22, 2021, American Express Travel Related Services Company, Inc.
("AmEx") commenced an action against NCM Group in the Supreme Court of the State of New
York, County of New York, under case no. 651215/2021, for non-payment of $60,026.34 due on
four corporate credit cards.

88.     On November 19, 2021, AmEx was awarded judgment in the total sum of
$60,576.34.

89.     On March 2, 2021, Fazoula Management, LLC, Daniel Friedman and Martin
Friedman (the "Fazoula Plaintiffs") filed a complaint against NCM Group, NCM Wireless Inc.,
Rahmeen Farudi, and Doron in the 11th Judicial Circuit, under case no. 2021-005100-CA-01,
alleging that the defendants had fraudulently induced them to provide capital commencing in 2018.

90.     The Fazoula Plaintiffs filed proofs of claim in the Bankruptcy Court claiming that
there had been failures to pay obligations that matured as early as August and September 2018.

91.     The Fazoula Plaintiffs alleged that the relationship with defendants "soured" in
2019.

92.     In their proofs of claim, the Fazoula Plaintiffs claimed that they are owed more than
$9.5 million by NCM Group and Doron.

93.     On May 21, 2021 VA Cell Inc. ("VA Cell") filed a complaint in the 11th Judicial
Circuit against NCM Group and Doron seeking money damages for $56,920.00 in goods sold, plus
interest thereon from August 18, 2020, and $140,000.00 arising from NCM Group's presentment
of an $35,000.00 payment which was dishonored.

94.     On October 6, 2021, judgment was entered in favor of VA Cell in the sum of
$173,484.04.

D.    **The Transfers**

95.    According to NCM Group's books and records, within the four year period preceding the Petition Date, Defendant received improper and/or avoidable transfers in the total amount of **$16,280.00** (collectively, the "Transfers") from NCM Group as detailed on **Exhibit 1** attached hereto, which were made in violation of applicable Federal and Florida Statutes to hinder, delay or defraud creditors and/or without NCM Group receiving reasonably equivalent value in exchange for such services.

96.    Plaintiff incorporates Exhibit 1 herein by reference and contains: (i) a list of payments received by Defendant from NCM Group or made on behalf of Defendant from NCM Group during the applicable time frame; (ii) the date of each payment; (iii) the amount of each payment; (iv) the bank account from which each payment was made; and (v) the method of payment.

97.    The Transfers were made from accounts held by NCM Group at JPMorgan Chase Bank and/or Suntrust Bank.

E.    **NCM Group's Insolvency**

98.    The insolvency of NCM Group can be traced back to the Transfers alleged herein which left the Business with unreasonably small operating capital and an inability of NCM Group to pay debts as such debts became due in the ordinary course.

99.    Significantly, as of the date of the Transfers set forth herein, NCM Group was insolvent or rendered insolvent by virtue of such Transfers in that it was no longer able to pay creditors in the ordinary course of the Business and were otherwise rendered insolvent or left with unreasonably small capital.

100.    At the time of the Transfers, NCM Group was not generally paying its debts as they came due; had obligations and faced claims beyond NCM Group's ability to pay; and otherwise had liabilities which exceeded the true value of its assets.

101.    At the time that each of the Transfers were made, Doron knew that causing the Transfers would inevitably and necessarily harm NCM Group and its creditors, as reflected in the claims register in the Bankruptcy Case and the pre-petition judgments entered against the Debtors.

102.    NCM Group was insolvent, because, among other reasons, it was unable to pay debts when such debts became due.

103.    The Transfers caused NCM Group to operate without any viable means of sustaining the Business.

104.    Further, the Transfers were made to Defendant without accounting to creditors of NCM Group.

105.    At the time the Transfers were effectuated, Defendant received, either directly or indirectly, the value of the Transfers without accounting to NCM Group and creditors of the Estate.

## RESERVATION OF RIGHTS

106.    Plaintiff is an after-the-fact appointed fiduciary.

107.    Plaintiff reserves the right to amend, modify, and/or supplement these and other allegations contained in this Complaint, and causes of action against Defendant, or persons or parties affiliated with Defendant, based on her further investigation.

### COUNT I
### AVOIDANCE OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A) and Fla. Stat. § 726.105(1)(a))

108.    Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 105 above as if specifically set forth herein.

14

109.    This is an action against Defendant pursuant 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A) and Fla. Stat. §§ 726.105(1)(a) to avoid and recover the Transfers made to Defendant as actual fraudulent transfers.

110.    NCM Group made the Transfers to Defendant within the four (4) year period prior to the Petition Date.

111.    The Transfers were voluntary or involuntary transfers of an interest of NCM Group's funds and assets and were made from accounts that were property of NCM Group.

112.    The Transfers constituted fraudulent transfers as to NCM Group and unjustly inured to the benefit of Defendant in that they were made with the actual intent to hinder, delay, or defraud an entity or individual to which or whom NCM Group was or became, on or after the dates that such transfers were made, indebted.

113.    At the time of the Transfers to Defendant, NCM Group had at least one actual creditor, including, but not limited to, the claims of the Internal Revenue Service, holding an unsecured claim allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.106(1).

114.    The Transfers are voidable under 11 U.S.C. §§ 544 and 548(a)(1)(A) and Fla. Stat. § 726.105(1)(a).

**WHEREFORE**, Plaintiff respectfully requests the Court enter a judgment in her favor against Defendant: (i) declaring the Transfers to Defendant to be fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A) and/or Fla. Stat. § 726.105(1)(a); (ii) avoiding the Transfers to Defendant as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(A) and Fla. Stat. §

726.105(1)(a); (iii) awarding Plaintiff, for the benefit of the Estate, pre- and post-judgment interest and costs; and (iv) granting such other and further relief as may be just and proper.

## COUNT II
## AVOIDANCE OF FRAUDULENT TRANSFERS
## (11 U.S.C. §§ 544 and 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b))

115.    Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 105 above as if specifically set forth herein.

116.    Plaintiff sues Defendant pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b) to avoid the Transfers made to Defendant as constructively fraudulent transfers.

117.    The Transfers were voluntary or involuntary transfers of an interest of NCM Group's funds and assets and were made from accounts that were property of NCM Group.

118.    NCM Group made the Transfers to Defendant within the four (4) year period prior to the Petition Date.

119.    NCM Group received less than reasonably equivalent value in exchange for the Transfers and:

   a) NCM Group was insolvent on the date of the Transfers, or was rendered insolvent as a result of the Transfers to Defendant;

   b) NCM Group was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with NCM Group were an unreasonably small capital; or

   c) NCM Group intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

120.    The Transfers did not confer any benefit upon, nor provide any value to, NCM Group or its creditors.

121.    NCM Group's records do not indicate that Defendant provided NCM Group with reasonably equivalent value in exchange for the Transfers.

122.    NCM Group's records do not indicate that NCM Group was indebted to Defendant.

123.    Upon information and belief, the Transfers had no legitimate purpose for NCM Group and were made for the benefit of Defendant.

124.    At the time of the Transfers to Defendant, NCM Group had at least one actual creditor, including, but not limited to, the claims of Internal Revenue Service, holding an unsecured claim allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.106(1).

125.    The Transfers are avoidable under 11 U.S.C. §§ 544 and 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b).

**WHEREFORE**, Plaintiff respectfully requests the Court enter a judgment in her favor against Defendant: (i) declaring the Transfers made to Defendant to be fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.105(1)(b); (ii) avoiding the Transfers to Defendant as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(B) and Fla. Stat. § 726.105(1)(b); (iii) awarding Plaintiff, for the benefit of the Estate, costs in accordance with applicable law; and (iv) granting such other and further relief as may be equitable and just.

### COUNT III
### AVOIDANCE OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. §§ 726.106(1))

126.    Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 105 above as if specifically set forth herein.

127.    Plaintiff sues Defendant pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. § 726.106(1) to avoid the Transfers made to Defendant as constructively fraudulent transfers.

128.    NCM Group made the Transfers to Defendant within the four (4) year period prior to the Petition Date.

129.    NCM Group received less than reasonably equivalent value in exchange for the Transfers to Defendant.

130.    The Transfers did not confer any benefit upon, nor provide any value to, NCM Group or its creditors.

131.    NCM Group's records do not indicate that Defendant provided NCM Group with reasonably equivalent value in exchange for the Transfers.

132.    NCM Group's records do not indicate that NCM Group was indebted to Defendant.

133.    Upon information and belief, the Transfers had no legitimate purpose for NCM Group and were made for the benefit of Defendant.

134.    NCM Group was insolvent at the time of the Transfers to Defendant or become insolvent as a result of the Transfers.

135.    At the time of the Transfers to Defendant, NCM Group had at least one actual creditor, including, but not limited to, the claims of Internal Revenue Service, holding an unsecured claim allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.106(1).

136.    The Transfers are avoidable under 11 U.S.C. §§ 544 and 548(a)(1)(B) and Fla. Stat. § 726.106(1).

**WHEREFORE**, Plaintiff respectfully requests the Court enter a judgment in her favor against Defendant: (i) declaring the Transfers to Defendant to be fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.106(1); (ii) avoiding the Transfers to Defendant as fraudulent transfers pursuant to 11 U.S.C. §§ 544 and 548(a)(1)(B) and Fla. Stat. § 726.106(1); (iii) awarding to Plaintiff, for the benefit of the Estate, pre- and post-judgment interest and costs; and (iv) granting such other and further relief as may be just and proper.

**COUNT IV**
**RECOVERY OF TRANSFERS**
**(11 U.S.C. § 550 and Fla. Stat. § 726.108)**

137.    Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 105 above as if specifically set forth herein.

138.    Plaintiff sues Defendant pursuant to 11 U.S.C. § 550 and and/or Fla. Stat. § 726.108 to recover the Transfers or the value thereof.

139.    The Transfers to Defendant are avoidable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), 548(a)(1)(B) and/or Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b), and 726.106(1).

140.    With respect to the Transfers, Defendant was either the initial transferee or entity for whose benefit the Transfers were made under 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2).

141.    To the extent that Defendant was or is found to be an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2), Defendant was not a transferee who took for value, in good faith, without knowledge of the voidability of the Transfers within the meaning of 11 U.S.C. § 550(b)(1), or an immediate or mediate good faith transferee thereof within the meaning of 11 U.S.C. § 550(b)(2).

142.    The Transfers to Defendant or value thereof, are recoverable by Plaintiff, for the benefit of the Debtors' Estate, from Defendant pursuant to 11 U.S.C. § 550 and Fla. Stat. § 726.108.

**WHEREFORE**, Plaintiff respectfully requests the Court enter a judgment in her favor against Defendant: (i) declaring Defendant to be either the initial transferee of the Transfers or entity for whose benefit the Transfers were made under 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee of the Transfers within the meaning of 11 U.S.C. § 550(a)(2) and/or Fla. Stat. § 726.108; (ii) directing Defendant to turn over to Plaintiff, for the benefit of the Debtors' Estate, the Transfers or the value thereof, plus interest at the applicable statutory rate, and costs and expenses to the extent permissible by applicable law; (iii) awarding Plaintiff, for the benefit of the Estate, costs under applicable law; and (iv) granting such other and further relief as may be equitable and just.

<u>**COUNT V**</u>
**UNJUST ENRICHMENT**

143.    Plaintiff adopts and realleges each and every allegation contained in Paragraphs 1 through 105 above as if specifically set forth herein.

144.    NCM Group, voluntarily or involuntarily, made the Transfers to Defendant in the total amount of $16,280.00.

145.    NCM Group conferred a benefit on Defendant by virtue of the Transfers.

146.    Defendant voluntarily accepted and retained the benefit conferred, which was the Transfers, as described above.

147.    The circumstances render Defendant's retention of the Transfers, which was the benefit conferred on it by NCM Group, inequitable unless Defendant pays the Estate the value of the Transfers.

148.    Defendant was unjustly enriched by virtue of the Transfers and Plaintiff is entitled to the return of the value of the Transfers.

**WHEREFORE**, Plaintiff respectfully requests the Court enter a judgment in her favor against Defendant: (i) granting money damages to Plaintiff against Defendant in the amount of the Transfers for the benefit of the Debtors' Estate, plus pre- and post-judgment interest at the applicable statutory rate, and costs and expenses to the extent permissible by applicable law; (ii) awarding Plaintiff, for the benefit of the Estate, costs under applicable law; and (iii) granting such other and further relief as may be equitable and just.

**Dated:  December 22, 2023.**

**DUNN LAW, P.A.**
*Counsel for Marcia T. Dunn,*
*solely as Chapter 7 Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Phone: (786) 433-3866
Fax:    (786) 260-0269
E-mail: dblansky@dunnlawpa.com


By: _ */s/ David A. Blansky*_____
        David A. Blansky, Esq.
        Fla. Bar No. 1033002

# EXHIBIT 1

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| | | | *In re* : Ilan Doron | | | | |
| | | | Case No.: 21-21964-RAM | | | | |
| | | | | | | | |
| | | | Schedule of Payments to Arturo Trujillo | | | | |
| | | | During the Period from December 23, 2017 through December 23, 2021 | | | | |
| | | | | | | | |
| | | | *(Sorted by Date)* | | | | |
| Institution | Account Name | Account No. | Date | Transaction Type | Reference | (Payee) | Amount |
| | | | | | | | |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 08/27/18 | Check | 1155 | Arturo Trujillo | $    (1,500.00) |
| JPMorgan Chase Bank | NCM Wireless Inc. | x8010 | 08/30/18 | Transfer | N/A | Arturo Trujillo | (2,280.00) |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 09/10/18 | Check | 1170 | Arturo Trujillo | (1,500.00) |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 09/24/18 | Check | 1184 | Arturo Trujillo | (1,500.00) |
| JPMorgan Chase Bank | NCM Wireless Inc. | x8010 | 10/01/18 | Check | 5278 | Arturo Trujillo | (5,000.00) |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 10/16/18 | Check | 1210 | Arturo Trujillo | (1,500.00) |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 10/25/18 | Check | 1238 | Arturo Trujillo | (1,500.00) |
| Suntrust Bank | NCM Group, LLC dba NCM Wireless | x1926 | 11/05/18 | Check | 1273 | Arturo Trujillo | (1,500.00) |
| | | | | | | Total | $   (16,280.00) |